IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BOB W. BARKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO.: |
| § | 3:06-CV-1514-P |
| THE HARTFORD LIFE AND ACCIDENT § | |
| INSURANCE CO., § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant The Hartford Life and Accident Insurance Company's ("Hartford" or "Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint and Motion for More Definite Statement, filed March 5, 2007.[1] After reviewing the briefing and applicable law, the Court DENIES Defendant's Motion.

**I.  Background and Procedural History**

Plaintiff Bob W. Barker ("Barker" or "Plaintiff") suffers from several severe diseases, including acute leukemia. (Pl.'s Second Am. Compl. ¶ 12.) In 2000, after suffering numerous injuries and as a result of his health condition, Barker was placed on long-term disability. (*Id.* ¶ 34.) On June 9, 2006, Hartford terminated Barker's long-term disability benefits. (Pl.'s Resp. to Def.'s First Mot. to Dismiss at 1.) Barker sent a letter of appeal to Hartford on August 2, 2006, indicating that he would file a lawsuit if Hartford failed to successfully resolve the appeal by

---

[1] Plaintiff filed his Response on March 26, 2007, and Defendant filed a Reply on April 10, 2007.

August 16, 2006. (*Id*; Pl.'s App. in Supp. of Mot. for TRO at 41.) Hartford responded on August 9, 2006, and stated that the appeal could take as long as ninety days to resolve. (Pl.'s Resp. to Def.'s First Mot. to Dismiss at 1.) On August 22, 2006, Plaintiff filed a motion requesting a temporary restraining order and temporary injunction reinstating Barker's benefits until the resolution of the dispute. (*See* Pl.'s Mot. for TRO at 26.) Plaintiff concurrently filed a Complaint requesting the same injunctive relief, his past and present benefits under the policy in question ("the Plan"),[2] additional damages for intentional infliction of emotional distress and fraudulent inducement, and attorney's fees. (*See generally* Pl.'s V. Original Compl.)

On or about September 18, 2006, Hartford granted Barker's appeal and has since paid Barker retroactive benefits from the date of termination to September 30, 2006, and reinstated his long term disability benefits.[3] (Def.'s Mot. for Leave to File its Reply at 1-2.) Additionally, on January 31, 2007, the Court entered an order granting in part and denying in part Defendant's First Motion to Dismiss. Specifically, the Court found that a claim for intentional infliction of emotional distress ("IIED") based on Hartford's alleged hostile conduct during investigation of Barker's benefits claim was not preempted by ERISA. The Court further found that Plaintiff's allegations of miscalculation of benefits, not including the allegations relating to any offset by Plaintiff's social security benefits, were preempted and should be recharacterized as a claim under ERISA. Further, the Court dismissed Plaintiff's IIED claim for failure to plead facts

---

[2] The Plan is undisputedly governed by the Employment Retirement Insurance Act of 1974 ("ERISA").

[3] Accordingly, the Court denied Plaintiff's Motion for a Temporary Restraining Order and Temporary Injunction as moot. (*See* Order of Oct. 13, 2006.)

sufficient to meet the high standard for "extreme and outrageous" conduct, but allowed Plaintiff an opportunity to replead such claim. Accordingly, the Court gave Plaintiff twenty days to replead his IIED claim and recharacterize a portion of the allegations forming the basis of his fraudulent inducement claim as a claim pursuant to ERISA. (*See* Order of Jan. 31, 2007.)

On February 19, 2007, Plaintiff filed his Second Amended Complaint asserting: (1) a claim for Recovery of Benefits under Section 502(a)(1)(B) of ERISA, (2) a claim for IIED, and (3) a claim for attorney's fees.[4] (Pl.'s Second Am. Compl. ¶¶ 14-16.) Defendant now moves to dismiss Plaintiff's Second Amended Complaint, asserting that: (1) Plaintiff again fails to plead facts sufficient to meet the "extreme and outrageous" standard for an IIED claim under Texas law; (2) Plaintiff's IIED claim is preempted by ERISA; (3) Plaintiff's ERISA claim is barred by the applicable statute of limitations; (4) Plaintiff improperly based his ERISA claim on social security offsets;[5] and, (5) Plaintiff failed to exhaust his administrative remedies in connection with the alleged miscalculation of his benefits before he brought such claim to this Court. (*See generally* Def.'s Second Mot. to Dismiss.)

---

[4] Plaintiff has included a request for attorney's fees in his original complaint and requested such fees in a separate motion. Although the parties briefly address attorney's fees in their briefing, as the Court noted in its last Order, an award of attorney's fees is premature at this juncture in the case. (*See* Order of Jan. 31, 2007 at 18 n.7.) Accordingly, the Court DENIES Plaintiff's pending motion for attorney's fees. Plaintiff is invited to re-urge any request for attorney's fees at the conclusion of this case.

[5] Defendant alternatively requests that, if Plaintiff's ERISA claim is based on a miscalculation not relating to social security offsets, Plaintiff be required to provide a more definite statement of his ERISA claim under Federal Rule of Civil Procedure 12(e). (Def.'s Second Mot. to Dismiss at 14-15.)

**Memorandum Opinion and Order**
3:06-CV-1514-P
Page 3 of 15

## II. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) authorizes dismissal of a pleading for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). In determining whether dismissal is appropriate, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the party against whom dismissal is sought. *See Capital Parks, Inc. v. Se. Adver. & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). The Court limits its inquiry to whether the nonmoving party is entitled to offer evidence to support its claims and does not address whether the party will ultimately prevail on the merits. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Accordingly, dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the [moving party] to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).

## III. Plaintiff's IIED Claim

### A. Extreme and Outrageous Conduct

Defendant argues that Plaintiff fails to plead conduct considered "extreme and outrageous" under Texas law. As the Court stated in its previous Order, extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). As a general rule, insensitive or rude conduct, including "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities[,] do[es] not rise to the level of extreme and outrageous conduct." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999) (internal citations omitted). Even so, in determining whether conduct is extreme or outrageous, the court must consider the context in which the conduct occurred and the relationship between the parties. *Id*. "'The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.'" *Id*. (quoting Restatement (Second) of Torts § 46 cmt. e (1965)).

Defendant cites several Texas cases that deem particular conduct not extreme and outrageous for the purpose of an IIED claim. After reviewing the cases cited by Defendant, the Court finds such cases distinguishable from the facts at hand. Most pertinent to the Court's analysis is *Tiller v. McLure*, 121 S.W.3d 710 (Tex. 2003). In *Tiller*, the defendant hired a small construction firm owned by plaintiff and her husband to build a storage unit. *Id*. at 711. Shortly after construction began, the plaintiff's husband was diagnosed with a malignant brain tumor and eventually had to cease working on the project; however, the plaintiff and the plaintiff's son remained the defendant's point of contact. *Id*. From December of 1997, when the defendant learned of the plaintiff's husband's illness, to March of 1998 when the construction concluded, the defendant telephoned the plaintiff at home approximately sixty times regarding the project. *Id*. at 712. The defendant sometimes called during evening hours, holidays, and weekends, and

was always rude and curt. *Id*. The defendant repeatedly expressed dissatisfaction with the work being done, incorrectly stated that the project was behind schedule, and threatened to terminate the contracts. *Id*. Most egregiously, when the plaintiff's husband passed away and defendant discovered she intended to close the construction site to allow the employees to attend the husband's funeral, the defendant informed the plaintiff's son that, if she did close the site, he would terminate the contracts he had with the plaintiff. *Id*. at 713-14. Additionally, the plaintiff had difficulty collecting payments from the defendant. *Id*. at 712-13. The Texas Supreme Court held that such conduct, although "callous and uncaring," did not rise to the level of extreme and outrageous. *Id*. at 714. The Court reasoned that the telephone calls, although insensitive and persistent, were not excessive on a single day or consistently at odd hours. *Id*. Also, the defendant never threatened the plaintiff personally or used vulgar language, but limited his criticism and threats to the contract. *Id*.

Although *Tiller* sets the bar high for what constitutes extreme and outrageous conduct, this Court finds the instant facts distinguishable. In *Tiller*, as the court noted, the threats were not a personal attack on the plaintiff. Here, Plaintiff alleges that the insurance investigators "attacked Mr. Barker's credibility and suggested that he was lying about his illnesses" and asked "belittling questions"in an effort to "shame Mr. Barker into returning to work." (Pl.'s Compl. ¶¶ 67-68.) Additionally, the context in these two cases is significantly different. The plaintiff in *Tiller* was understandably emotionally frail after the death of her husband when the defendant threatened to terminate the contracts. In this case, Barker alleges he has several ongoing severe physical and mental conditions that Defendant is well aware of, including panic and anxiety

attacks and depression, that place him in a constant position more susceptible to severe emotional distress. Further, the parties in *Tiller* were parties to a commercial contract. Here, Defendant controls Plaintiff's disability benefits, which he depends on to obtain life-giving medical treatments; clearly, Defendant is in a position to greatly affect and control Plaintiff's interests, a factor the Court must evaluate when making its decision. Finally, the court in *Tiller* determined the defendant's threat to terminate the contract if the plaintiff ceased construction on the day of her husband's funeral to be his most egregious conduct; however, this threat was not made directly to the plaintiff, but was communicated via her son. In the instant case, Plaintiff alleges that Defendant directly harassed and shamed him about his disability in what Plaintiff describes as several humiliating phone calls. Taking all this evidence as a whole, and considering the context of the alleged conduct and the relationship of the parties, the Court finds Plaintiff's case contains more egregious allegations than those in *Tiller*. To be sure, an insurer's right to inquire about a customer's entitlement to benefits does not extend to intentional and calculated humiliation and belittlement.[6]

Additionally, the Court must evaluate the severity and regularity of the conduct as a whole when determining whether it is sufficiently extreme and outrageous. *See GTE Sw.*, 998 S.W.2d at 616. Plaintiff alleges that Defendant "repeatedly" harassed him "on multiple

---

[6] The other cases cited by Defendant appear to allege conduct either less severe, less frequent, or in a different context than that in *Tiller*, and are therefore not persuasive. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) (plaintiff alleged that insurer was repeatedly rude and gave her the "runaround" when she inquired about payments); *C.M. v. Tomball Reg'l Hosp.*, 961 S.W.2d 236, 244-45 (Tex. App.–Houston [1st Div.] 1997, no pet.) (plaintiff, a 15-year-old rape victim, was treated rudely and callously by a nurse *on one occasion*); *Cooper v. Sprint/United Mgmt. Co.*, No. 396-CV-2263-D, 1997 WL 328002, at *3 (N.D. Tex. Jun. 6, 1997) (conduct was evaluated under the heightened standard applicable in an employment context).

occasions." (Pl.'s Second Am. Compl. ¶¶ 67-68.)  At this stage, Plaintiff has made allegations sufficient to at least allow him to discover and assert facts as to the frequency of the phone calls, exactly what was said by Defendant's representatives, and what those representatives knew about Plaintiff and his condition, which may allow the Court or a jury to better evaluate whether the context of the situation makes Defendant's conduct more egregious.

In sum, the Court finds that Plaintiff has, at this early stage in the case, stated allegations that could be deemed "extreme and outrageous" under the law.  Therefore, the Court will not dismiss this cause of action on this basis.

### B.   ERISA Preemption

This Court previously engaged in an extensive discussion of whether or not Plaintiff's IIED claim is preempted by ERISA.  (*See* Order of Jan. 31, 2007.)  The Court stated:

> Clearly, Barker's IIED claim would not exist in the absence of the Plan; however, the Court finds this too tenuous a connection to warrant ERISA preemption.  The harassment alleged by Barker occurred during the investigation of Barker's ERISA claim, not during the actual administration of benefits.  Remedying such tortious conduct is not an area of exclusive federal concern, but is traditionally left to the states.  Put another way, the right Barker has to be free from such hostile or intimidating treatment exists independently from his rights under his ERISA plan. If such claims were held to be preempted by ERISA, Barker would be subject to such treatment with no available recourse, and "a plan administrator could 'investigate' a claim in all manner of tortious ways with impunity."  *Erlandson* [*v. Liberty Life Assurance Co.*], 320 F. Supp. 2d. [501, 508 (N.D. Tex. 2004)] (quoting *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001)).  The fact that Barker does not seek recovery of benefits or damages defined by the terms of the Plan reinforces the conclusion that Barker's IIED claim is governed by state law and not ERISA.  Thus, under the first prong of the Fifth Circuit test, this claim does not appear to address an area of exclusive federal concern.
>
> Further, the duties Defendant allegedly violated do not arise out of the terms of the Plan.  Rather, Plaintiff alleges violation of Defendant's common law tort duties.

> Although the allegations clearly involve the relationship between principle ERISA entities, Barker's IIED claim, at least in part, does not affect the duties of the parties arising from the actual terms of the ERISA plan. That is, determining whether or not Defendant's interviewing techniques are tortious does not require interpretation of the Plan or clarify Barker's benefits due under the Plan. Accordingly, the IIED claim cannot be said to affect the administrator-participant relationship under the terms of the Plan and does not satisfy the second prong of the Fifth Circuit standard. Therefore, the Court finds Barker's IIED claim based on Hartford's hostile conduct on the phone is not preempted by ERISA.

(Order of Jan. 31, 2007 at 11-12.) Additionally, the Court found any claim for IIED based on Hartford's termination of Plaintiff's benefits preempted by ERISA. (*Id*. at 12.) The Court's opinion has not changed. Plaintiff still alleges severe emotional distress resulting from alleged humiliating, shameful, and intentional harassment by Defendant during more than one phone call. A claim of IIED based on these allegations is not preempted and the Court will not dismiss Plaintiff's claim on this basis.

In sum, the Court DENIES Defendant's Motion with respect to Plaintiff's claim for IIED.

## IV. Plaintiff's ERISA Claim: Statute of Limitations

### A. Accrual of ERISA Claim

Defendant first asserts that Plaintiff's ERISA claim is barred by the applicable statute of limitations. Defendant argues that Plaintiff was on notice of the miscalculation of benefits he now complains of by January of 2002; thus, even if the Court chose to apply the four-year statute of limitations governing contract actions in Texas, as opposed to the three-year statute of limitations provided by the Plan, Plaintiff's ERISA claim is time-barred.

To determine whether Plaintiff's ERISA claim is time-barred, the Court must first determine when the cause of action accrued. In the Fifth Circuit, an ERISA cause of action

accrues when a request for benefits is denied. *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (citing *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992)); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357 (5th Cir. 1981). Other Circuits have affirmatively held that an ERISA cause of action may accrue before a request for benefits is filed or formally denied if there is a clear repudiation of benefits made and known by the beneficiary. *See Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 455 & n.8 (5th Cir. 2006) (Owen, J., dissenting) (citing cases from other circuits adopting the "clear repudiation" rule). The Fifth Circuit has yet to specifically address the application of the "clear repudiation" rule or decide when an ERISA claim based on a miscalculation of benefits accrues for statute of limitations purposes. *See id*. at 455. However, this Court agrees that "[t]he proposition that ERISA claims accrue when benefits are denied cannot be a one-size-fits-all rule, irrespective of the facts." *Id*.

A recent Third Circuit decision addressed accrual of a claim for miscalculation of benefits. *See Miller v. Fortis Bens. Ins. Co.*, 475 F.3d 516 (3d Cir. 2007). In *Miller*, the court noted that the "clear repudiation" rule derives from the federal discovery rule, which states that a claim accrues and the statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim. 475 F.3d at 520. An event other than a formal denial of benefits may serve to put the plaintiff on notice of his or her entitlement to benefits. *Id*. at 521. Specifically, the court held that "[l]ike a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under the plan." *Id*. (citing 29 C.F.R. § 2560.503-1(m)(4).) The Third Circuit reasoned that, "repudiation by underpayment

**Memorandum Opinion and Order**
3:06-CV-1514-P
Page 10 of 15

should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award. . . . The beneficiary should exercise reasonable diligence to ensure the accuracy of his award." *Id*. at 522 (internal citations omitted). Additionally, the court noted that "monthly checks based on a simple calculation of sixty percent of his salary should have alerted him that he was being underpaid." *Id*. Ultimately, the Third Circuit found that the cause of action accrued on the date the plaintiff received the underpayment and had the information necessary to be on notice as to any ERISA claim for denial of benefits.

To the contrary, a prior district court case out of New York, *Miele v. Pension Plan of N.Y. State Teamsters*, held that "because a miscalculation generally involves an award of benefits rather than a denial of benefits and thus is less likely to put a plaintiff on notice of a possible claim," a miscalculation claim does not accrue until a plaintiff inquires about his benefits and is told that the computation of his benefits is correct. 72 F. Supp. 2d 88, 99 (E.D.N.Y. 1999) (citing *Kiefer v. Ceridian Corp.*, 976 F. Supp. 829, 842-43 (D. Minn. 1997)). The *Miller* court specifically addressed this notion and stated:

> We are not persuaded by this approach. We do not believe that the accrual date in this case should derive from a bare assumption that benefit recipients are ill-equipped to safeguard their rights. Indeed, we require beneficiaries to safeguard those rights upon a denial of benefits, and this case provides no compelling reason to require less diligence after an award. Of course, it is possible that a denial of benefits is more likely to incite a beneficiary to action than an award; however, that possibility alone cannot justify years of inaction. Moreover, we do not believe that for there to be a clear repudiation, a plan must "confirm" a benefit award to the beneficiary. Without any indication of deficient notice, a beneficiary's receipt of an award is sufficient to inform him that the plan has determined his entitlement. Further assurances should not ordinarily be necessary to make clear that a plan believes its benefit determination is accurate.

475 F. 3d at 523; *see also Peace*, 462 F.3d at 455 (Owen, J., dissenting) (stating that a miscalculation cause of action accrued when the plaintiff knew what had been promised and what the defendant intended to pay under the plan).

Accordingly, under *Miller*, it appears Plaintiff was on notice of any miscalculation claim, at the latest, on January 15, 2002, when he received written confirmation from Hartford that his payments would represent 67% of his salary and bonus in the year he became disabled. At that time, Plaintiff received or had been receiving payments that he believed equated to this calculation. Although the Plan stated terms different from those promised by Hartford and, pursuant to the terms of the Plan, Hartford apparently computed Barker's payments in contravention to what was promised, under the reasoning in *Miller*, this does not affect or hinder Plaintiff's ability to calculate 67% of his salary and bonus in the year he became disabled, determine whether or not his benefit payments represented that amount, and bring an ERISA claim based on any discrepancy. This situation is clearly distinguishable from the cases where the application or interpretation of the plan was unclear or the party did not know what their benefit payments would be. *See Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 895 (1st Cir. 1978) ("[i]n such cases, plaintiff obviously has no cause for complaint until he is refused benefits to which he has some colorable claim, since it cannot be known earlier how the instrument will be interpreted.").

In light of this case law, it appears Plaintiff's claim may be time-barred under either a three-year or four-year statute of limitations. Plaintiff has, however, requested an opportunity to amend his complaint and address more fully Defendant's statute of limitations defense, raised for

the first time in this motion. (*See* Pl.'s Resp. at 14 n.5.) Therefore, the Court GRANTS Plaintiff twenty (20) days from the date of this Order to make any such amendment.

### B. Continuing Violations Doctrine

Plaintiff also argues that the "continuing violations" exception applies in this case, making each issuance of an incorrect payment a new cause of action. The Fifth Circuit has not ruled on whether the continuing violations doctrine applies in the context of an ERISA claim. *Berry v. Allstate Ins. Co.*, 84 Fed. Appx. 442, 444 (5th Cir. 2004) (refraining from deciding whether to apply the continuing violations doctrine in an ERISA action). In *Miele*, the court likened a one-time miscalculation to a denial of benefits, rather than a continuous monthly suspension or default of payment. *Id*. at 101. Under ERISA, Barker is entitled to "clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, under *Miele*, at the time Barker received the initial incorrect payment pursuant to a miscalculation, he had legal recourse to seek clarification of such payment and any future payment based on the same miscalculation. *See Miele*, 72 F. Supp. 2d at 102; *see also Russell v. Bd. of Trustees of the Fireman, Policemen and Fire Alarm Operators' Pension Fund*, 968 F.2d 489, 493 (5th Cir. 1992) (refusing to apply the similar continuing tort doctrine when the act complained of has "the degree of permanence that should trigger the claimant's awareness of and duty to assert her rights").[7] The Court has not found persuasive case law indicating that each miscalculated

---

[7] Notably, Plaintiff cites *Meagher v. International Association of Machinists and Aerospace Workers Pension Plan* in support of his argument that each issuance represents a separate cause of action. 856 F.2d 1418 (9th Cir. 1988). Although the Ninth Circuit did reach this conclusion in *Meagher*, it gave little reasoning for such a holding and, in later cases, questioned the holding's viability. *See Miele*, 72 F. Supp. 2d at 101 (citing *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996)).

payment is a separate violation from which a new cause of action arises. However, because there is no binding Fifth Circuit precedent directly on point, the Court will, at this time, refrain from determining this issue and allow Plaintiff to address the continuing violations theory in his amended Complaint.

    **C.    Equitable Tolling**

"The doctrine of equitable tolling permits a plaintiff to avoid the bar of the limitations period if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim." *Cobell v. Norton*, 260 F. Supp. 2d 98, 109 (D.D.C. 2003). Plaintiff contends that the statute of limitations should be tolled because, despite due diligence, i.e. despite asking for a copy of the Plan, he was unable to obtain the vital information that his benefits were calculated differently under the Plan than what Hartford represented to him. Under the law discussed above, it appears upon receipt of payment and Hartford's representation of calculation, Barker had all vital information to discover the miscalculation. However, for the reasons noted above, the Court will allow Plaintiff to assert otherwise in an amended Complaint.[8]

## V.    Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss and GRANTS Plaintiff twenty (20) days from the date of this Order to amend his Complaint to more

---

[8] Because the Court allows Plaintiff an opportunity to replead, it does not reach Defendant's remaining arguments or request for a more definite statement. If Defendant finds Plaintiff's amended complaint insufficient, it can reassert these arguments at that time.

**Memorandum Opinion and Order**
3:06-CV-1514-P
Page 14 of 15

fully address Defendant's statute of limitations arguments. Additionally, the Court DENIES Plaintiff's Motion for Attorney's Fees as premature.

**It is so ordered.**

Signed this 31st day of July 2007.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE